IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAMEKO BRICKHOUSE,** *also known as Koko Brickhouse*, **#R05052,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**JACQUELINE LASHBROOK, and BILLY JOHNSON,**<br><br>    **Defendants.** | Case No. 20-cv-00056-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for partial summary judgment filed by Defendants Lashbrook and Johnson. (Doc. 35). Defendants argue that Plaintiff Brickhouse failed to exhaust her administrative remedies prior to filing this lawsuit. Brickhouse filed a response in opposition to the motion. (Doc. 38). For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

### BACKGROUND

Plaintiff Brickhouse is a transgender woman and an inmate of the Illinois Department of Corrections ("IDOC"). She is currently incarcerated at Pontiac Correctional Center ("Pontiac") and filed this case pursuant to 42 U.S.C. §1983 for violations of her constitutional rights that occurred while she was housed at Menard Correctional Center ("Menard"). Brickhouse asserts that in 2018, Defendant Johnson, a correctional officer, began retaliating against her because she had filed a Prison Elimination Act ("PREA") complaint against another staff member, Correctional Officer Wilson. Johnson harassed her, denied her lunch trays, made threats and sexual comments towards her, and wrote her a false disciplinary ticket. Brickhouse also claims that Johnson allowed

Page 1 of 8

another inmate, named Jones, to leave his cell so that Jones could sexually assault Brickhouse while in the shower. Brickhouse is proceeding on the following counts:

**Count 1:** Eighth Amendment claim against Johnson for allowing Inmate Jones to leave his cell so that Jones could sexually assault Brickhouse.

**Count 2:** Eighth Amendment claim against Lashbrook for failing to protect Brickhouse from Johnson and Inmate Jones.

**Count 3:** First Amendment claim against Johnson for retaliating against Brickhouse for filing a PREA complaint against another correctional officer.

**Count 4:** Fourteenth Amendment due process claim against Johnson for issuing Brickhouse a false disciplinary ticket.

(*See* Doc. 15).

On August 13, 2021, Defendants Billy Johnson and Jacqueline Lashbrook filed a motion for summary judgment. (Doc. 35, 36). They argue that Brickhouse failed to exhaust her administrative remedies as to Counts 2, 3, and 4 prior to initiating this lawsuit. Defendants state that Menard's grievance logs and the records from the Administrative Review Board ("ARB") demonstrate that Brickhouse submitted only one grievance relevant to the issues in this case. The grievance is dated November 8, 2018, and was submitted by Brickhouse directly to the ARB three times on November 16, 2018, May 14, 2019, and September 25, 2019, after Brickhouse had been transferred from Menard to Pontiac. (Doc. 36-3; Doc. 36-4). In the grievance, Brickhouse states that she "had been made to have sex with another inmate because he was let in the shower by an officer (Johnson) to rape me" and further alleges that "C/O Johnson had been harassing me because I filed a PREA complaint on another officer names Wilson." (Doc. 36-4, p. 8-9).

Defendants concede that the November 8 grievance successfully grieves the issues related to Count 1 against Johnson for allowing another inmate out of his cell to sexually assault Brickhouse. However, they contend that the November 8 grievance did not exhaust Brickhouse's

administrative remedies as to Count 3 regarding alleged retaliatory conduct by Johnson. Defendants argue that the grievance was untimely, improperly filed with the ARB, and did not provide sufficient factual details to satisfy the requirements of the Illinois Administrative Code.

Defendants further argue that there are no records that Brickhouse ever filed any other grievances regarding the allegations in this case. Therefore, Counts 2, 3, and 4 should be dismissed.

In response, Brickhouse agrees that she did not exhaust her administrative remedies as to Counts 2 and 4. Brickhouse also concedes that she did not include any information that Johnson retaliated against her by denying her lunch trays, making sexual comments towards her, and issuing her a false disciplinary ticket. (Doc. 38, p. 4). However, she argues that Count 3 should not be dismissed to the extent she is claiming that Johnson retaliated against her by harassing her, threatening her, and allowing another inmate to rape her. Brickhouse points out that in the grievance she specifically wrote that "C/O Johnson had been harassing me because I filed a PREA complaint on another officer name Wilson. C/O Johnson said I made a mistake filing a PREA complaint on his friend C/O Wilson." (*Id.* at p. 6). The grievance then proceeds to describe the events of May 21, 2018, when Johnson allowed Jones to leave his cell and did not lock the shower room door after placing Brickhouse in the shower room. Brickhouse argues these factual details sufficiently alerted prison officials that the filing of the PREA complaint motivated Johnson's conduct.

Brickhouse also contends that because the ARB did not make the determination that any part of the November 8 grievance was untimely filed, Defendants cannot now raise the argument at summary judgment. Accordingly, she asserts the November 8 grievance grieved the retaliation claim against Johnson, Count 3.

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

### *II. Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing

the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Brickhouse was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Under the grievance procedures, an inmate commences the grievance process by first submitting a written grievance to an institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed within 60 days after the discovery of the incident, occurrence, or problem detailed in the grievance. If the grievance relates to allegations of sexual abuse, then there is no time limit for filing the grievance and the 60 day deadline does not apply. *Id.*

When a complaint is not resolved through a counselor, then the grievance is considered by a grievance officer, who must render a written recommendation to the chief administrative officer—the warden—within two months after receiving the written grievance, "when reasonably feasible under the circumstances." *Id.* § 504.830(e). The warden then reviews the findings and recommendations of the grievance officer and advises the offender of his or her final decision in writing. *Id.* Dissatisfied inmates may appeal the decision to the ARB within 30 days after the date of the warden's decision. *Id*. § 504.850(a).

There are four circumstances where an inmate is required to file a grievance directly with the ARB, rather than with a counselor at the institution, as discussed above. *Id.* § 504.870(a). As relevant here, an offender must submit a grievance directly to the ARB when grieving issues "that

pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." *Id.* § 504.870(a)(4) (emphasis added).

## ANALYSIS

As the parties agree that Brickhouse fully exhausted her administrative remedies as to Count 1 and did not exhaust her administrative remedies as to Counts 2 and 4, the only issue left for the Court to decide is whether the November 8, 2018 grievance exhausted Count 3 regarding alleged retaliation by Johnson.

The Court finds that the November 8 grievance served to exhaust Count 3 in part. In the Complaint, Brickhouse alleges that Johnson retaliated against her for filing a PREA complaint against another correctional officer by "harassing her." (Doc. 1, p. 6). She states that Johnson had a history of harassing prisoners and using Inmate Jones to "intimidate and assault other prisoners." Brickhouse also asserts that Johnson retaliated against her by refusing lunch trays, making verbal threats and sexual comments, and writing a false disciplinary ticket against her. (*Id.* at p. 7). Brickhouse does not include any information in the November 8 grievance about denial of lunch trays, sexual comments, or the issuance of a false disciplinary ticket, but she does include details that in retaliation for filing a PREA complaint Johnson harassed her by threatening her and allowing another inmate out of his cell in order assault her. (Doc. 36-4, p. 8-9). Thus, the November 8 grievance provides sufficient detail to alert prison officials of Johnson's alleged involvement in retaliatory harassment, which included threats and an orchestrated assault against Brickhouse by another inmate.

Furthermore, the Court will not rule that Brickhouse failed to timely grieve the retaliation claim when the ARB based its determination on the substance of the grievance. As previously discussed, pursuant to grievance procedures, there is no time limit on claims regarding sexual abuse. However, Brickhouse had only 60 days from the May 21, 2018, when she was attacked by

Jones, to grieve Johnson's retaliatory conduct. *See* 20 ILL. ADMIN. CODE §504.810(a). Even though the ARB did not receive the grievance until November 16, 2018, the ARB did not determine that any part of the grievance was untimely or improperly submitted. Rather, the ARB member who reviewed the grievance, Travis Bayler, addressed the merits of the grievance and determined that the issues presented were moot because the allegations were already being investigated by "central investigations." (Doc. 36-4, p. 6-7). Bayler did not notify Brickhouse that the delay in filing the grievance prevented him from investigating any of the allegations or was in anyway filed not in accordance with grievance procedure. Thus, the Court will not "enforce an administrative requirement" that was not relied upon by the ARB when making its determination. *McDaniel v. Meisner,* 617 F. App'x 553, 558 (7th Cir. 2015) (finding that the district court erred in finding that a grievance was untimely when the examiner did not consider the timeliness of the grievance). *See also Conyers v. Abitz,* 416 F. 3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits.").

Accordingly, the November 8 grievance served to fully exhaust Count 3 to the extent that Brickhouse claims Johnson harassed her by threatening her and allowing another inmate out of his cell in order assault her in retaliation for filing a PREA complaint. Count 3 will be dismissed as to allegations that Johnson retaliated against Brickhouse by denying her lunch trays, making sexual comments, and writing her a false disciplinary ticket.

### DISPOSITION

For the reasons stated above, the Partial Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 35) filed by Defendants Lashbrook and Johnson is **GRANTED in part** and **DENIED in part**. Defendant Lashbrook is **DISMISSED without prejudice**. **COUNTS 2** and **4** are **DISMISSED without prejudice. Count 3** is **DISMISSED in**

**part.** Brickhouse shall proceed on the following claims:

**Count 1:** Eighth Amendment claim against Johnson for allowing Inmate Jones to leave his cell so that Jones could sexually assault Brickhouse.

**Count 3:** First Amendment claim against Johnson for retaliating against Brickhouse for filing a PREA complaint against another correctional officer by threatening Brickhouse and orchestrating the sexual assault of Brickhouse by Inmate Jones.[1]

The stay on merits discovery is **LIFTED**, and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

The Motion for Status (Doc. 39) filed by Plaintiff Brickhouse is **DENIED as moot** in light of this Order.

**IT IS SO ORDERED.**

**DATED:   March 15, 2022**

                                                *s/Stephen P. McGlynn*
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**

---

[1] The Court has reworded Count 3 for clarity.